PAUL JOHNSON *v*. STATE OF INDIANA.

[No. 2-772A38. Filed July 26, 1973.]

106

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

SULLIVAN, J.—Defendant-Appellant Paul Johnson was convicted of possession of heroin (Count 1) and possession of narcotics paraphernalia, i.e., needle, cooker and eyedropper (Count 2) following trial by the court without a jury. Johnson seeks reversal because of admission of "tainted" evidence resulting from an alleged warrantless arrest and an unreasonable search and seizure.

The evidence most favorable to the State reveals that on November 30, 1970, Indianapolis police officers Brenton and Mukes received information from an informant that Johnson had heroin in his possession at 2161 North Meridian Street (his apartment). Based upon this information, the police officers went to Johnson's apartment without obtaining a warrant.

Upon arriving in the hallway outside of Johnson's apartment, both officers looked through a hole in Johnson's front door located at approximately the same height as the eye level of the officers. Officer Brenton observed Johnson inject something into his arm and also observed a plastic vial containing capsules laying beside Johnson. Officer Mukes

knocked on the door. Johnson came to the door and without opening it asked who was there. The officers answered that it was the police. Upon hearing footsteps running away from the door, the officers kicked the door down and chased Johnson into a hallway where he stumbled and fell. Laying beside Johnson was the plastic vial which later was found to contain 82 capsules. Officer Brenton when entering the apartment, after the forcible entry, observed the injection devices laying on the floor. A subsequent search of Johnson's apartment resulted in the finding of two additional injection devises plus approximately 15 additional capsules. The officers also observed recent "tracks" or puncture wounds on Johnson's inner elbow. Johnson was placed under arrest and a "field test" made on one of the capsules obtained from the vial indicated the presence of an opiate drug.

During trial, defense counsel was permitted to ask Brenton and Mukes preliminary questions concerning the warrantless arrest and the search and seizure in Johnson's apartment. During his preliminary examination, Officer Mukes testified that he had known the informant for $3\frac{1}{2}$ years and had obtained reliable information from him in the past that had led to several convictions. The court in overruling the motion to suppress made during trial found that probable cause existed to arrest Johnson without a warrant and that the narcotics and equipment found in the apartment were therefore admissible.

Johnson contends that all evidence submitted by Officer Brenton should have been suppressed. Appellant argues as follows:

(1) The officers did not have probable cause for the arrest of Johnson, thus the subsequent search and seizure was unreasonable.

(2) Even if probable cause did exist, the officers should have obtained warrants for both the arrest of Johnson and the search of his apartment.

(3) The entry into Johnson's apartment was illegal because the officers did not state their purpose prior to breaking down the door.

(4) The search of Johnson's apartment was illegal and all evidence obtained from the search should have been suppressed.

## THE FACTS AND CIRCUMSTANCES CONSTITUTED PROBABLE CAUSE FOR ARREST

Probable cause for an arrest exists if the facts and circumstances known by the arresting officer and of which he has trustworthy information would warrant a prudent man of reasonable caution in believing that the accused had committed or was committing an offense. *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133; *Williams* v. *State* (1969), 253 Ind. 316, 253 N.E.2d 242.

The facts in the present case indicate that the arresting officers received information from an informant that Johnson had sold the informant heroin in Johnson's apartment approximately ten minutes before the informant met with the officers.

Whether such information constitutes probable cause depends upon whether the probability of the accuracy of the tip is sufficiently high. This test can usually be met in one of two manners—the past reliability of the informant or by reference to extrinsic facts to test the accuracy of the tip. *McCray* v. *Illinois* (1967), 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62; *Draper* v. *United States* (1959), 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327; *Bowles* v. *State* (1971), 256 Ind. 27, 267 N.E.2d 56, 58. In *Bowles* the Supreme Court of Indiana stated:

"While probable cause may be supported and indeed created by information supplied by an informer, it must be demonstrated that the probability of accuracy of the "tip" is sufficiently high. That is, the informer must be shown to be reliable. One manner of

doing this is by referring to his past record of reliability. Another is by reference to extrinsic facts, including those which he may relate, to test his accuracy."

Officer Mukes testified that he had known the informant for approximately 3½ years and the informant's information had proven to be reliable in the past and had led to convictions. The probable cause requirement as to reliability was met.

## THE LACK OF A WARRANT DID NOT INVALIDATE JOHNSON'S ARREST

Johnson contends that the officers should have obtained a warrant for both his arrest and the search of his apartment since the events took place at 11:00 A.M. on a Monday when the courts were open and a warrant thus obtainable.

We agree that warrants should be obtained whenever practicable. *Throop* v. *State* (1970), 254 Ind. 342, 259 N.E.2d 875. An exception to this general principle exists however when an arresting officer has probable cause to believe that a crime is being committed in his presence. *Von Hauger* v. *State* (1970), 254 Ind. 69, 257 N.E.2d 669; *Williams* v. *State, supra*.

Both arresting officers here stated that when they were standing in the corridor outside Johnson's apartment, they looked through a hole in Johnson's door and observed Johnson using injection equipment upon himself. This observation would lead a prudent officer of reasonable caution to believe that a crime was being committed. Without regard therefore to the reliability of the information provided by the informant which prompted the officers to be present in the hall outside defendant's apartment, the warrantless arrest was properly made. *Williams* v. *State, supra*.

## ENTRY INTO THE APARTMENT WAS LEGAL

Johnson urges that any claimed legality of the seizure of contraband was vitiated by the fact that the arresting officers did not announce their purpose after knocking on his door and in making forced entry violated IC 1971, 35-1-19-6, Ind. Ann. Stat. § 9-1009 (Burns 1956 Repl.) which provides:

> "To make an arrest in criminal actions, the officer may break open any outer or inner door or window of a dwelling house or any other building or inclosure to execute the warrant, if, after notice of his authority and purpose, he be refused admittance."

Johnson would have us hold that the "notice of purpose" requirement must be met in all instances. We disagree. The Supreme Court of Indiana in *State* v. *Dusch* (1972), 259 Ind. 507, 289 N.E.2d 515, 517, though affirming a judgment of acquittal, declared:

> "It seems clear, therefore, that under both Federal and State Constitutional provisions dealing with searches and seizures there exists a requirement that the police knock and announce their authority before conducting a search of a dwelling. It is equally apparent, however, that this knock and announce requirement is not to be adhered to blindly regardless of the particular circumstances confronting the authorities at the time the search is to be conducted. The question which divided the United States Supreme Court in *Ker* v. *California, supra,* and which we are principally concerned with here is under what exigent circumstances would the police be excused from performing the announcement of authority."

In *Ker* v. *California* (1963), 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, the opinion of Mr. Justice Clark in which he was joined by Justices Black, Stewart and White, acknowledged that state law might constitutionally make provision for an exception to the "announcement of purpose" requirement where and when exigent circumstances are present. Mr. Justice Brennan, in a separate opinion joined by

Justices Douglas, Goldberg and the Chief Justice addressed the exigent circumstances issue with greater specificity noting three exceptions to the "announcement of purpose" requirement:

"(1)  where the persons within already know of the officers' authority and purpose, or

(2)  where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or

(3)  where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." (374 U.S. 23, 47)[1]

Thus, although the Justices of the United States Supreme Court in *Ker* differed in their opinion as to particular circumstances which justify an unannounced entry, eight of the nine members of the Court acknowledged such exceptions to be constitutionally permissible.

Indiana law looks to the facts of each particular case and focuses upon the particular situation encountered by the arresting officer. *State* v. *Dusch, supra.*

The facts in the present case disclose that the police officers after knocking and identifying themselves, heard footsteps running away from the door. It would seem a futile gesture on the part of the officers to announce their purpose under such conditions. Our viewpoint that such circumstances negate the requirement of announcement of purpose is not novel. The Federal statute, 18 U.S.C. § 3109, very similar to the Indiana statute, provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

1.  In *Hadley v. State* (1968) 251 Ind. 24, 238 N.E.2d 888 an exception for "fresh pursuit" was also recognized.

Although the federal statute speaks in terms of the execution of a search warrant, *Miller* v. *United States* (1958), 357 U.S. 301, 78 S. Ct. 1190, 2 L. Ed. 2d 1332 required that the same standard be applied to an arrest made upon probable cause.

In *United States* v. *Manning* (1971), 448 F. 2d 992 at 997 (2d Cir.) (cert. den. 92 S. Ct. 541, 1971) upon rehearing the court held that "announcement of purpose" was not necessary when the arrestee fled after officers had knocked on his door. The facts of the *Manning* case are almost identical to the facts in the case at bar. In *Manning*, Devine (the arresting officer) received a call from the informant, who stated that Manning was on his way to his girl friend's apartment with narcotics. Devine instructed the informant to go to the apartment, and to telephone again if Manning arrived with drugs. Without attempting to secure a warrant, Devine then proceeded to that address and observed Manning's car parked outside. Devine then was informed by his office that the informant had called to confirm seeing the drugs in the apartment. Together with other agents, Devine then went to the apartment door, announced that he was a federal agent, and, after hearing running inside, kicked the door down.

We now therefore hold that the circumstances encountered by the arresting officers here, constituted the exigent circumstances necessary to excuse the requirement of an announcement of purpose.

## ALTHOUGH SPECIFIC ITEMS OBTAINED IN THE SEARCH OF JOHNSON'S APARTMENT WERE OBTAINED ILLEGALLY ADMISSION THEREOF CONSTITUTED HARMLESS ERROR

The scope of search incident to a valid arrest without a search warrant is circumscribed by the area within the

arrestee's immediate control—the area within which the arrestee might gain possession of a weapon or destructible evidence. *Chimel* v. *California* (1969), 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636. Applying this criterion to the facts of the present case, the plastic vial containing 82 capsules of heroin found next to Johnson at the time of his arrest was lawfully seized.

The injection equipment which was seen by the officer upon the floor as they entered Johnson's apartment was admissible under the "plain view" doctrine. The term "search" connotes an uncovering of that which is hidden or prying into places for something which is concealed. It is not a search to observe that which is in plain view. *Griffin* v. *State* (1972), 259 Ind. 205, 285 N.E.2d 644; *Alcorn* v. *State* (1970), 255 Ind. 491, 265 N.E.2d 413; *Deering* v. *State* (1972), 152 Ind. App. 650, 284 N.E. 2d 553.

Even assuming that Johnson correctly asserts that the evidence found in the bedroom was illegally obtained and should have been suppressed because the bedroom was beyond his "immediate control", we will not reverse unless the alleged error was prejudicial to the defendant.

The introduction of inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. See *Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860; *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621; *Jackson* v. *State* (1971), 257 Ind. 589, 275 N.E.2d 538.

The 82 capsules and injection equipment, both admissible evidence, were sufficient of themselves to support a conviction of the charges in the indictment. Thus, even if there were an illegal search of Johnson's bedroom, the evidence seized therein was merely cumulative and consequently not prejudicial.

Judgment affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 299 N.E.2d 194.