IDELLA TAYLOR *v.* STATE OF INDIANA.

[No. 2-1073A212. Filed June 27, 1974. Rehearing denied July 19, 1974. Transfer denied September 26, 1974.]

*Gil I. Berry, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—While operating a motor vehicle, appellant Taylor was apprehended as a suspect in two robbery-burglaries. After placing her under arrest, the arresting officers discovered a .25 calibre automatic pistol in her purse. They also recovered a .38 calibre revolver from beneath the seat of the car after having been advised of its presence by Taylor herself. Taylor did not have a permit or license for the weapons. She was tried by the court without intervention of a jury and was convicted upon two counts of violation of the Firearms Act.

Taylor attacks her conviction upon two bases:

(1) That the weapons were obtained as a result of an unlawful and unreasonable search and seizure.
(2) That her Motion for Discharge should have been sustained at the conclusion of the State's case since the State did not prove that she did not have a valid license for the firearms.

### WEAPONS WERE LAWFULLY SEIZED INCIDENT TO ARREST MADE UPON PROBABLE CAUSE

For approximately two or three weeks prior to the occasion in question, police were seeking Taylor as a suspect in two robbery-burglaries. They had initiated surveillance of Taylor's apartment which was leased in Taylor's maiden name, Idella Bruner. On the day in question, the arresting officer, who was in charge of the investigation, received a tip from

a reliable[1] named informant that Taylor "was carrying clothing out and putting it in a trunk of the Chevrolet . . . and gave the appearance of moving." The officer also had information that Taylor had relatives and friends in Kentucky and surmised, reasonably we believe, that she might be leaving Indianapolis for Kentucky.

The officer proceeded to the area and observed an automobile known to be registered to Taylor proceeding south on Madison Avenue in Marion County, the most direct route to Kentucky. After stopping the vehicle and identifying Taylor, the officer placed her under arrest stating that such arrest was in connection with the robbery-burglaries.

The informant had also told the officer that Taylor probably had a gun on her person or in her car in violation of the 1935 Firearms Act. The officer had Taylor open her purse in which was found a .25 calibre automatic pistol. Taylor then volunteered "Well, you might as well get the other one—it's under the seat." A .38 calibre revolver was found under the driver's seat. Both weapons were loaded. The very presence of the weapons in Taylor's possession is further indication of the reliability of the informant for it was he who advised the arresting officer that Taylor probably had such weapons on her person or in her car. See, *Mentzer* v. *State* (1973), 156 Ind. App. 295, 296 N.E.2d 136.

Probable cause for arrest exists if facts or circumstances known by the arresting officer and of which he had trustworthy information would warrant a prudent man of reasonable caution to believe that the accused had committed an offense. *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133. And it is settled that such probable cause may be supported—even created—by information supplied by a reliable informant. *Johnson* v. *State* (1973), 157

---

1. The defense contested the past reliability of the informant but answers to preliminary questions directed to the arresting officer indicated such past reliability despite one case in which the informant had provided information being dismissed by the prosecutor and another in which a jury acquitted the person against whom the information was given.

Ind. App. 105, 299 N.E.2d 194. As stated in *Lynch* v. *State* (1972), 258 Ind. 284, 280 N.E.2d 821, 824:

"The very use of the words 'probable cause' or 'reasonable grounds to believe' when used in conjunction with arrest by a peace officer for a felony indicates that the officer is not in possession of all the information which may be necessary to support a conviction. If the officer was in possession of such information, then we would have an arrest of a person for the commission of a felony in the presence of an officer, and the question of 'probable cause' or 'reasonable grounds for belief' would not exist."

The factual circumstances preceding Taylor's arrest were such as to provide the arresting officer with adequate probable cause to believe not only that Taylor was attempting to flee the jurisdiction and to thereby avoid arrest and prosecution for her alleged participation in the robbery-burglaries, but as well, that she had a firearm or firearms in her possession in violation of the law. In light of these facts, there is no basis for holding the arrest invalid merely because it was *stated* to be upon charges of burglary and robbery. We need not, nor do we, therefore, decide whether there was sufficient evidence of record to implicate Taylor in the robbery-burglaries so as to constitute probable cause for an arrest upon that theory.

An arrest is statutorily defined as "the taking of a person into custody, that he may be held to answer for a public offense." IC 1971, 35-1-17-1, Ind. Ann. Stat. § 9-1004 (Burns 1956). It is accomplished by "an actual restraint of the person of the defendant, or by his submission to the custody of the officer. . . ." IC 1971, 35-1-19-1, Ind. Ann. Stat. § 9-1005 (Burns 1956). The validity of an arrest does not depend upon the words used by the arresting officers in effecting it for no particular words need be used—no words need be used at all. *Dillon* v. *State* (1971), 257 Ind. 412, 275 N.E.2d 312; *Pullins* v. *State* (1970), 253 Ind. 644, 256 N.E.2d 553.

Appropriate to the case before us, our Supreme Court

in *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133, 137 held:

> "The officers' correct choice of a legal theory to rely on at the time of the arrest is not the factor which provides protection to persons from unreasonable searches and seizures. The barrier to an intrusion on a person's constitutionally guaranteed 'zone of privacy' by way of an arrest for a crime is removed only when the police officers are aware of specific, articulable facts amounting to 'probable cause'. *State* v. *Smithers, supra.* Where the police awareness of such facts is not present, then their choice of a legal theory is irrelevant because the arrest is invalid in any case. Where the police awareness of such facts is present, society's need to have the person arrested outweighs whatever minimal value the person arrested receives from having the arresting officers choose the correct legal theory for the arrest."

To the same effect is *Manson* v. *State* (1967), 249 Ind. 53, 229 N.E.2d 801. We thus hold that the arresting officer here had probable cause to arrest Taylor.

The seizure of both weapons was made pursuant to the valid arrest. Furthermore, the presence and location of the revolver under the seat was voluntarily disclosed by Taylor. Both weapons were therefore properly admitted into evidence over objection and despite Taylor's Motion to Suppress. *U. S.* v. *Robinson* (1973), 414 U.S. 218, 94 S. Ct. 467; *Gustafson* v. *Florida* (1973), 414 U.S. 260, 94 S. Ct. 488; *Lynch* v. *State, supra; Sizemore* v. *State* (1974), 159 Ind. App. 549, 308 N.E.2d 400; *Cooper* v. *State* (1973), 158 Ind. App. 82, 301 N.E.2d 772.

### ERROR, IF ANY, IN OVERRULING MOTION FOR DISCHARGE WAIVED AND DEFENDANT'S OWN TESTIMONY ESTABLISHED LACK OF FIREARM PERMIT

State Police Officer Green, in charge of all firearm registration and permit records for Indiana[2] testified that a search

---

2. IC 1971, 35-23-4-5, Ind. Ann. Stat. § 10-4738 (Burns Supp. 1973) requires that records as to all persons licensed to carry firearms be maintained by the Indiana State Police.

of such records failed to reveal that Idella Taylor had applied for or received a permit to carry a firearm.

It is Taylor's contention that since she was also known as Idella Bruner and since the State's evidence in chief did not reflect a permit check under that name, the State failed to prove prima facie that she did not have a valid permit and that therefore her Motion for Discharge should have been sustained at the conclusion of the State's case.

This assertion may be summarily rejected. By proceeding to introduce evidence in her own defense after the over-ruling of the Motion for Discharge, Taylor waived the error, if any, in that ruling. *Hancock* v. *State* (1971), 256 Ind. 697, 271 N.E.2d 731.

We therefore must consider Taylor's sufficiency of evidence contention with respect to the permit issue in view of all the evidence of record. The contention is totally destroyed by the testimony of Taylor herself:

"Q. I take it then at no time did you ever have a permit issued to you in Indiana?
A. No.
Q. For either gun?
A. No.
Q. And not under the name of Taylor or under the name of Bruner?
A. No.
Q. Or any other name?
A. No."

Judgment affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 313 N.E.2d 92.