DEBBIE ANN JENKINS *v.* STATE OF INDIANA.

[No. 3-875A175. Filed March 28, 1977.]

*Elizabeth H. Hamacher,* of Crown Point, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

GARRARD, J.—Appellant Jenkins was convicted of possession of heroin. On appeal Jenkins asserts that the search which produced the drugs was illegal and the evidence should have been suppressed. We affirm the conviction.

The events leading to Jenkins' prosecution commenced on the afternoon of October 26, 1974. The evidence favorable to the state discloses that about 2:15 p.m. Officer Vaughn of the East Chicago Police Department, who was off duty and not in uniform, was talking with two men at the Watson Service Station. A green and white 1973 Oldsmobile occupied by three persons drove into the service area at a high rate of speed nearly striking Vaughn and the others. When Vaughn exclaimed about this the driver responded, "better be glad I'm not crazy; if I were, one of you might die." The driver then got out of the car. He had a brown paper bag from which he pulled a "sawed off" shotgun. Apparently, the shotgun was discharged once in the air. Meanwhile Officer Vaughn had backed away from the car and had drawn his service revolver. This was observed by Jenkins who was the passenger in the front seat of the Oldsmobile. She told the driver that Vaughn had a gun. The driver then waved his shotgun around, got back in the car and drove off. Officer Vaughn secured the license number of the Oldsmobile and telephoned the police station.

About one half hour later Officer Grau spotted a vehicle matching the description of the Oldsmobile. It was parked, and a man and woman appeared to be putting gasoline into it. In response to Grau's radio message Vaughn and another officer arrived. Vaughn identified the two as having been the passengers during the earlier incident.

The three officers then went over to the car and told the two they were under arrest. Appellant then said, "we don't have the gun no more, we got rid of it. You can search me, you can search the car, we don't have the gun, we got rid of it." Officer Grau requested Jenkins to empty her pockets "for the safety of [the] police officers and for her own safety." Jenkins then removed from her dress pocket two medicine-type bottles and handed them to Grau. The bottles contained pink capsules of heroin.

Jenkins' first assertion of error is that the court did not conduct a probable cause hearing pursuant to IC 1971, 35-3.1-1-1 (d) regarding grounds for this "original" arrest. Appellant misconceives the application of this statute. The statutory section provides for a probable cause determination *when* "an information is filed and the defendant has already been arrested. . . ." Its purpose is to establish that probable cause exists to try a person formally charged with a crime. If probable cause did not exist, the information was subject to being quashed. However, that would not bar a subsequent prosecution if probable cause was later obtained. *Denson* v. *State* (1975), 263 Ind. 315, 330 N.E.2d 734.

However, Jenkins ignores the fact that when a series of events disclose the commission of more than one criminal offense, the state may elect to prosecute under any or all of the applicable statutes. *Adams* v. *State* (1974), 262 Ind. 220, 314 N.E.2d 53.

There was no requirement that the court conduct a probable cause hearing pursuant to IC 1971, 35-3.1-1-1 for an offense with which Jenkins was never formally charged.[1] Here, the only information filed against Jenkins was for possession of

---

1. The issue under such circumstances is merely whether any evidence was obtained illegally. That question is considered next in this opinion.

heroin. The court did make a probable cause determination on that charge, and no error has been urged concerning it.[2]

Jenkins' remaining assignments of error assert the heroin was illegally seized and its introduction into evidence should have been suppressed. In support of these assignments Jenkins argues that the original arrest was for drawing a weapon on a known or uniformed police officer engaged in the execution of his duties; that Officer Vaughn was not in uniform and did not identify himself; and that therefore there was not probable cause to believe the felony proscribed by IC 1971, 35-21-4-2 had been committed. The state points out that another statute, IC 1971, 35-1-79-5, makes it a felony to purposely point or aim a gun at another person. While the transcript clearly reveals that the officers told Jenkins and her companion they were under arrest, nothing was said disclosing what precise charge the officers had in mind.

We find it unnecessary to review the precise offenses with which appellant might have been charged when the police approached her.[3] Appellant's arguments misconstrue the nature of the protection afforded by the Fourth Amendment and Article 1, § 11 of our constitution. These provisions provide our citizens with a constitutionally protected zone of privacy into which government officials may not intrude without proper cause. When such cause exists, however, the intrusion is "reasonable" and offends no constitutional rights.

Thus, the traditional question which arises when police officers effect an arrest without a warrant is whether the officers, at the time they acted, had probable cause to seize. If they did, then public policy in detecting and prosecuting criminal offenders outweighs the value of having the arresting officers choose and enunciate the correct legal theory for the arrest. *Smith* v. *State* (1971),

---

2. No issue has been urged claiming that the police did not have probable cause to believe the bottles contained heroin.

3. Nor is it necessary to consider what may constitute probable cause to believe a person is an accomplice or accessory to a crime.

256 Ind. 603, 271 N.E.2d 133. Accordingly, a search made incident to an arrest will be upheld if the police had probable cause, in fact, to arrest the person searched. This is true even where the police announce as a reason for the arrest a charge upon which they lack probable cause. *Smith, supra; Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636; *Taylor* v. *State* (1974), 160 Ind. App. 561, 313 N.E.2d 92.

However, probable cause to believe a person has committed a felony is not the only justification for a warrantless intrusion into the "zone of privacy." In appropriate circumstances a police officer may approach a person to investigate possible criminal behavior even though he lacks probable cause to make an arrest and the detention involved is technically a seizure. Where the circumstances warrant, the officer may also conduct a limited search of such a person for weapons. *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200.

In the present case, Officer Vaughn, who was present at the subsequent detention, had observed appellant as one of a trio riding around in an automobile carrying a loaded sawed off shotgun concealed in a paper sack. He had observed their conduct at the filling station approximately a half hour before the time in question.

Under our "stop and frisk" statute, IC 1971, 35-3-1-1, the officers could reasonably infer that criminal activity had been or was about to be committed and that all three individuals were involved. Due to the incident with the shotgun, it was reasonable for the officers to conclude that appellant and her companion might be armed and dangerous so as to justify a limited search for weapons pursuant to IC 1971, 35-3-1-2. Appellant's withdrawal[4] of the bottles from her outer clothing and delivery of them to the officer preclude the necessity of

---

4. The officer's statement to Jenkins disclosed no intent to search beyond the scope permissible under *Terry* or IC 1971, 35-3-1-2.

any detailed discussion as to how extensive the search might have been. Since the officers' conduct did not constitute an unreasonable search or seizure, the evidence was properly admitted regardless of the fact that the officers told Jenkins she was under arrest, and whether or not at the time they had probable cause to arrest. We would need to consider these questions only if their conduct in search and detention had gone further than the boundaries provided in *Terry* and IC 1971, 35-3-1-1 *et seq.*

Affirmed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 361 N.E.2d 164.